LEROY A. WALKER and EDITH LUCILE WALKER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Walker v. Commissioner
Docket No. 9075-73
United States Tax Court
T.C. Memo 1975-303; 1975 Tax Ct. Memo LEXIS 66; 34 T.C.M. (CCH) 1326; T.C.M. (RIA) 750303; October 6, 1975, Filed James R. Ganz, for the petitioners. Robert J. Murray, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency of $6,619.50 in estate tax due from the Estate of Nettie E. Walker, deceased. *67 Petitioners as transferees within the meaning of sections 6324 and 6901, Internal Revenue Code of 1954, [1] will be liable for any deficiency in estate tax that this Court may determine is due plus interest thereon as provided by law. Due to a concession made by petitioners, the sole issue remaining for decision is the valuation of two parcels of farm property totaling 193.58 acres as of October 1, 1969, the date of death of Nettie E. Walker. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and exhibits are incorporated by this reference. Petitioners Leroy A. and Edith Lucile Walker, husband and wife, resided in Gibbon, Nebraska, when they filed their petition in this case. Petitioners are the sole beneficiaries and heirs-at-law of Nettie E. Walker, deceased. Nettie E. Walker (hereinafter referred to as the decedent) died intestate on October 1, 1969. At the time of her death, the decedent was a citizen of Gibbon, Buffalo County, Nebraska. Due to the nature of the decedent's real and personal property at the time of her death, there was no probate of *68 her estate but only a determination of inheritance tax proceeding pursuant to the applicable statutes of the State of Nebraska. Petitioner, Leroy A. Walker, timely filed a Federal estate tax return for the estate with the District Director of Internal Revenue, Omaha, Nebraska, on December 17, 1970. On or about June 11, 1941, the decedent conveyed real property to petitioners as joint tenants with right of survivorship, which is legally described as follows: SW 1/4 of the NE 1/4, the E 1/4 of the NE 1/4 and that part of the E 1/2 of the SE 1/4 lying North of the Hastings and Northwestern Railroad Company's Right-of-Way, all of Section 22, Township 9, North, Range 13, West of the 6th P.M., Buffalo County, Nebraska. The above-described real property (hereinafter referred to as the 153-acre tract) consisted of 153.58 acres of irrigated farm land. There was a house and a few out buildings on the property as of October 1, 1969, the date of the decedent's death. The transfer of the 153-acre tract was made to petitioners subject to the decedent's right to use and enjoy the property until the time of her death. The petitioners gave no consideration for the transfer of the aforementioned *69 real property. At the time of her death, the decedent and petitioners owned the following real property as joint tenants with right of survivorship: NW 1/4 of the NW 1/4 Section 23, Township 9, North, Range 13, West of the 6th P.M., Buffalo County, Nebraska. The property (hereinafter referred to as the 40-acre tract) consisted of 40 acres of dry farm land on October 1, 1969. A farm road separates the 40-acre tract from the 153-acre tract. Petitioners gave no consideration for their respective interests in the 40-acre tract. In 1967, the 40-acre tract was leveled in preparation for gravity irrigation. The leveling process made deep cuts in the field, leaving streaks of non-productive soil. This condition was present at the time of the decedent's death and was still visible at the time of trial. A well was not immediately dug in the field because its cost was prohibitive in light of the poor condition of the soil. Instead of placing an irrigation well on the property, steps were taken to restore the soil to its original level of fertility. Not until some time in 1971 was a well placed on the property at a cost of approximately $2,500. Alkali was present in the soil at the *70 east end of the 40-acre tract. The alkali could be neutralized with proper fertilization, but the process had to be repeated each year. The cost of neutralizing the alkali was approximately $10 to $15 per acre per year. In a year of heavy rainfall, the alkali, in combination with the high water table, could cause a substantial crop loss. In the years 1969 and 1970, the subject properties were leased for $3,900. In 1971, this rent was increased to $6,000 per year. The property taxes on the two tracts were $569, $1,685 and $2,117 for the taxable years 1969, 1970 and 1971, respectively. The 153-acre tract and the 40-acre tract were valued on the Federal estate tax return at $61,200 ( $400 per acre) and $8,000 ( $200 per acre), respectively. The Commissioner determined that the fair market values of the respective parcels of real property were $80,000 and $18,350 as of October 1, 1969, or approximately $525 per acre and $458 per acre, respectively. The decedent's estate had no assets which could have been used to pay the deficiency, plus statutory interest, which was determined by the Commissioner. Because of the absence of assets to pay the deficiency, the issuance of a statutory *71 notice of deficiency or tax assessment against the decedent's estate by the Commissioner would have been futile. No part of the deficiency in estate tax determined to be due from the decedent's estate, together with interest thereon, has been paid. The petitioners concede that they are transferees within the meaning of sections 6324 and 6901, Internal Revenue Code of 1954, and, therefore, are liable for any deficiency in estate tax that this Court may determine is due from the Estate of Nettie E. Walker, deceased, plus interest thereon as provided by law. Sales of real estate in the vicinity of the subject properties and tracts sold in sections of land containing the parcels in question are as follows: Sale
Proximity to
Price per
Adjusted Price
Additional Factors at No.
Date
Acreage
Subject
Acre
per Acre *
Time of Sale
1
9/27/66
80
2 miles north &
2 miles east
$525.00
$635.25
Better soil and location
than subject; required
additional leveling
2
4/1/68
80
1/4 mile north
$400.00
$442.00
Inferior soil association;
required additional
leveling and another well
3
2/9/65
40
1 mile north &
1-1/4 miles west
$550.00
$726.00
Better soil; well irrigated
4
2/1/73
80
1 mile north &
1/4 mile east
$687.50
$526.60
Superior soil association;
well irrigated
5
7/24/72
80
1 mile south &
3 miles west
$550.00
$442.75
Similar soil association;
does not irrigate as well
as subject; has more
waste land
6
6/15/67
160
1 mile south &
2-1/2 miles west
$475.00
$565.25
Slightly better soil
association; required
leveling and a new well
7
2/1/67
80
1-1/2 miles west
$540.00
$640.45
Better soil association;
irrigates very well
8
2/1/67
40
Same section as
153-acre tract
$408.75
$484.78
Soil association similar
to subject; east end
of property is subject
to flooding
9
6/7/71
40
Same section as
40-acre tract
$350.00
$334.25
Soil association substan-
tially inferior; entire
tract used for pasture
land
10
1/20/73
113
Directly west of
153-acre tract
$634.51
$488.57
Property is divided by
railroad right-of-way;
substantial amount of
waste ground
11
2/5/71
179
3-1/2 miles west
& 2-1/2 miles
south
**
**
Inferior soil association;
portion of property is
island in river
*72 ULTIMATE FINDINGS OF FACT The fair market values of the 153-acre tract and the 40-acre tract on October 1, 1969, were $80,000 and $16,000, respectively. OPINION The sole issue presented for decision is the valuation of two tracts of farm land on October 1, 1969, the date of death of Nettie E. Walker. The two parcels consisted of 193.58 acres of farm land located in Buffalo County, Nebraska. At the date of decedent's death, the so-called 153-acre tract was irrigated farm land; the 40-acre tract had been leveled for irrigation purposes, but an irrigation well had not been dug. The leveling process made deep cuts in the field, leaving streaks of non-productive soil. In addition, alkali was present in the soil at the east end of the 40-acre tract. The term "fair market value" is defined in section 20.2031-1(b), Estate Tax Regs., as follows: The fair market value is the price at which the property *73 would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts. * * * The date of death values placed on the two tracts by the parties are as follows: 153.58-Acre Tract on October 1, 1969
Value claimed on estate tax return
$61,200
Opinion of value of petitioners'
expert witness
61,200
Value determined by the Commissioner
in his statutory notices of
liability
80,000
Opinion of value of respondent's
expert witness
80,000
40-Acre Tract on October 1, 1969
Value claimed on estate tax return
$ 8,000
Opinion of value of petitioners'
expert witness
8,000
Value determined by the Commissioner
in his statutory notices of
liability
18,350
Opinion of value of respondent's
expert witness
18,350
Each party offered the testimony of one expert witness. Both of the experts were qualified; however, the qualifications of respondent's expert were somewhat more impressive. Though respondent's expert was not a resident of and had never previously appraised property in Buffalo County, he familiarized himself with local trends regarding the demand *74 for land, the availability of financing, and sales of comparable property. The expert witnesses both based their opinions on comparable sales of real estate. Respondent's expert witness relied primarily on sales 1, 2, 5 and 6 set forth in our findings of fact in valuing the subject properties at approximately $525 per acre. He determined that sales 3, 4, 7, 8, 9 and 10 required substantially greater adjustments for time, soil type, and additional leveling and concluded that the adjustments to these sales were too great to consider them as reliable comparables. Respondent's expert witness valued both of the subject tracts as irrigated farm land on October 1, 1969. In valuing the 40-acre tract, he deducted the cost of an irrigation well from the value he determined it would have had as irrigated crop land. He made no adjustment for the condition of the soil of the 40-acre tract resulting from the recent leveling and the presence of alkali. Petitioners' expert witness used sales 2 and 11 set forth in our findings of fact in valuing the subject properties. Based on an examination of the soil map, we conclude that petitioners' expert erroneously determined that the soil association *75 for the farm land represented by sale No. 2 was equal to or better than the soil in petitioners' 153-acre tract. Unlike respondent's expert, he classified the 40-acre tract as dry land and made a downward adjustment in its value based on his belief that its relatively small size would depress its market value. We find the adjustment based on the tract's size to be unsupported by comparable sales of small tracts. After considering the appraisal reports and the testimony of the expert witnesses, we conclude that petitioners have failed to carry the burden of proof placed upon them by Rule 142(a), Tax Court Rules of Practice and Procedure, as to the value of the 153-acre tract. Accordingly, we find that the fair market value of the 153-acre tract was $80,000 on October 1, 1969. With respect to the value of the 40-acre tract, we believe that respondent's expert witness improperly valued the property by classifying it as irrigated farm land and deducting the cost of an irrigation well. Furthermore, he should have made a downward adjustment in value for the adverse soil conditions. We, therefore, conclude that the value of the 40-acre tract was $16,000, or $400 per acre, on the date of *76 decedent's death. Decision will be entered under Rule 155.
Footnotes
1. All Code section references are to the Internal Revenue Code of 1954, as amended.↩
*. Adjustment is a time adjustment only. Composite figure of 7% reflects annual appreciation in land values and local trends in Buffalo County. ↩
**. Total sale price of No. 11 was $45,000. There is not a breakdown between irrigated crop land, dry land and accretion ground.↩